# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-00753-SCT

*IN THE MATTER OF THE LAST WILL AND
TESTAMENT OF ERNEST W. SMITH, DECEASED:
FRANK SMITH AND CLIFFORD SMITH,
ADMINISTRATOR C.T.A.*

*v.*

*FLOYD W. SMITH*

DATE OF JUDGMENT:                     03/05/2003
TRIAL JUDGE:                          HON. PAT H. WATTS, JR.
COURT FROM WHICH APPEALED:    GEORGE COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANTS:      ERIC D. WOOTEN
                                             REBECCA C. TAYLOR
ATTORNEY FOR APPELLEE:          DONALD P. SIGALAS
NATURE OF THE CASE:             CIVIL - WILLS, TRUSTS, AND ESTATES
DISPOSITION:                          AFFIRMED - 03/03/2005
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE SMITH, C.J., EASLEY AND GRAVES, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

### PROCEDURAL HISTORY

¶1.      Ernest W. Smith and Birtie Lee Smith (Birtie) executed a joint Last Will and Testament on October 29, 1984. The joint will appointed the surviving spouse as executor of the other's estate. The Smiths, on February 18, 1993, executed three warranty deeds (the deeds) with reservation of life estate for both of their lives in favor of three of their twelve children, Wanda Smith (Wanda), Edna Earl Good (Edna) and Floyd Smith (Floyd). On April 26, 1995,

Ernest W. Smith died testate. At the time of his death, Ernest was a bona fide resident of George County, Mississippi.

¶2.     In a separate proceeding, Birtie was adjudicated on April 12, 1996, by the Chancery Court of George County, Mississippi, to be in need of a conservatorship to manage her estate. Chancellor Pat H. Watts, Jr., appointed two of Birtie's daughters, Geraldine Snelgrove and Wanda Lee Havard, to serve as co-conservators.[1]     Based on the previous adjudication that Birtie was unable to manage financial affairs, Birtie executed a resignation as executor of her husband's estate and requested the appointment of their son, Ernest Smith, Jr. (Ernest, Jr.).   The Chancery Court of George County appointed Ernest, Jr., as Executor of the Estate of Ernest W. Smith, Deceased.

¶3.     On April 14, 1998, Birtie and the Executor of the Estate, Ernest, Jr., filed a petition to investigate and set aside deeds and other relief in the Chancery Court of George County, Mississippi.    The petition named Floyd, Wanda and Edna.    Floyd was duly served with a summons and a copy of the petition.   Floyd filed an answer and counterclaim to the petition. Wanda and Edna each entered a waiver of process and entry of appearance.

¶4.     Due to Ernest, Jr.'s death, Clifford Smith replaced Ernest, Jr., as Executor of the Estate of Ernest W. Smith, Sr., Deceased.  Pursuant to chancery court order, dated November 5, 1998, Clifford was appointed Administrator C.T.A., of the Estate.   On February 23, 1999, Birtie died.

¶5.     Floyd's counsel deposed Darwin Maples, the attorney who prepared the three deeds in question.    After the deposition, Floyd's counsel filed a motion for summary judgment.    The

---

[1] Chancellor Watts is also the chancellor who granted the summary judgment in the estate proceedings that is the subject of this appeal.

2

Estate responded to the motion for summary judgment Frank Smith (Frank) intervened and responded separately to Floyd's motion for summary.

¶6. The chancery court conducted a hearing on the motion for summary judgment. At the conclusion of the hearing on October 18, 2002, the parties were allowed to file post-hearing briefs in support of their position. On March 5, 2003, Chancellor Watts rendered a judgment granting Floyd's motion for summary judgment.

¶7. Clifford, Administrator C.T.A., filed a motion to reconsider the judgment. Frank filed his notice of appeal on April 23, 2003. This Court stayed Frank's appeal pending the Estate's motion to reconsider.

¶8. On April 29, 2003, the chancery court heard the motion to reconsider and requested briefs from each of the parties. On July 12, 2003, the chancery court filed its opinion, and on October 10, 2003, filed its order denying the motion for reconsideration. The Estate then appeal led to this Court.

## FACTS

¶9. Ernest and Birtie executed a joint Last Will and Testament on October 29,1984. The will divided and devised the Smiths' real property among their then-living twelve children. On February 18, 1993, the Smiths' executed three warranty deeds, with reservation of a life estate on their lives, in favor of Floyd, Wanda and Edna. The three deeds were recorded in the George County Chancery Clerk's office on the following day.

¶10. Ernest died on April 26, 1995, from asbestosis. The will designated Birtie as executor. However, Birtie was previously adjudicated by the Chancery Court of George County to be unable to manage her financial affairs and placed under a conservatorship. On October 17,

3

1997, the petition for probate of will, appointment of executor, issuance of letters testamentary of Ernest W. Smith, Deceased was filed in the Chancery Court of George County. The petition requested the appointment of Ernest, Jr., to serve as executor. Chancellor Watts executed an order appointing Ernest, Jr., Executor of the Estate. On April 14, 1998, Ernest, Jr., filed a petition to set aside the three deeds to Floyd, Edna, and Wanda. Floyd filed an answer and counterclaim contesting the petition. Edna and Wanda executed a waiver of process and entry of appearance.

¶11.	Based on Ernest, Jr.'s death, Clifford was appointed Administrator C.T.A., of the Estate on November 5, 1998. On February 23, 1999, Birtie died. After Birtie's death, Floyd, Wanda and Edna claimed ownership of the property conveyed by the three deeds.

¶12.	Attorney Darwin Maples prepared the three deeds at the request of Ernest. In support of Floyd's motion for Summary Judgment, the transcript of Maples's deposition taken on September 3, 1999, was attached. Maples testified under oath as to his preparation of the three deeds in question. Maples testified that after leaving the bench he had, in his capacity as an attorney, dealings with Ernest and Birtie on various legal problems over the years.

¶13.	In his deposition, Maples testified as follows:

Q. Was Floyd Smith ever present?
A. No. Floyd was not here when that happened.
Q. Was there ever any contact with Floyd Smith concerning this?
A. It was never mentioned in my presence . . .
Q. In this lawsuit that's pending in his estate, there's allegations that at the time Mr. Smith executed this deed in your office, that he didn't have the capacity to do that. Now, the day he signed that deed, were you present?
A. Yes. I was present.
Q. Did he give you any indication that he did not know what he was doing?
A. No. He knew what he was doing, in my opinion.
Q. What about Ms. Smith?

4

A. The same thing.

Q. There's also allegations that Mr. Smith did not sign this deed, someone signed it for him.

A. No. He signed it.

Q. You actually saw him sign the deed?

A. I did.

Q. There's also allegations that he did not appear before a notary public when he signed this deed?

A. No. It was notarized here in this office.

Q. There were allegations also that someone other than Mr. Smith– Mr. Smith did not sign this deed. Is there any truth to that?

A. That's not true.

Q. At the time of the signing of this deed, was there any evidence, any observation made by you, that would make you think that either Mr. E.W. Smith or Ms. Birtie Lee Smith were not competent to sign?

A. No. There was nothing– no indication that they did not know what they were doing.

Q. Was there ever any indication or conversation between you and Mr. E.W. Smith or Ms. Birtie Lee Smith that someone had talked them into doing this?

A. No. No.

Q. Why did Mr. Smith tell you he was doing this?

A. Because of the tragic accident that Floyd had suffered with the loss of his legs. And he said that – words to this effect. He said that he wanted it done because he thought it would help Floyd be better enabled to make a living. He could have cattle or raise crops there and it would help him make a living there. That was it.

¶14. Floyd filed a motion for summary judgment pursuant to M.R.C.P. 56© ). The Estate and Frank filed separate responses. Chancellor Watts heard the motion for summary judgment on October 18, 2002. The chancery court allowed the Estate and Frank to file post-hearing memoranda.

¶15. The motion for summary judgment was granted in favor of Floyd on March 7, 2003. On March 13, 2003, the Estate requested reconsideration of the judgment. Frank filed his notice of appeal on April 23, 2003. This Court stayed Frank's appeal pending the Estate's motion for reconsideration.

¶16. The chancery court heard the motion for reconsideration and directed the parties to submit briefs in support of their positions. The chancery court denied the motion for reconsideration, and Clifford as Administrator C.T.A., of the Estate, appealed to this Court.

## ANALYSIS

### I. Summary Judgment

¶17. The Estate and Frank will hereafter be referenced collectively as the Estate. On appeal, the Estate contends that Floyd failed to meet his burden of establishing that there is no genuine issue of a material fact existed and the chancery court erred in granting summary judgment.

¶18. This Court applies a de novo standard of review on appeal from a grant of summary judgment by the trial court. *Vaughn ex rel. Vaughn v. Estate of Worrell*, 828 So. 2d 780, 782 (Miss. 2002); *Russell v. Orr*, 700 So.2d 619, 622 (Miss. 1997); *Richmond v. Benchmark Constr. Corp.*, 692 So.2d 60, 61 (Miss. 1997); *Merrimack Mut. Fire Ins. Co., v. McDill*, 674 So.2d 4, 7 (Miss. 1996); *Northern Elec. Co. v. Phillips*, 660 So.2d 1278, 1281 (Miss. 1995). Rule 56( c) of the Mississippi Rules of Civil Procedure provides that summary judgment shall be granted by a court if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56( c). The moving party has the burden of demonstrating that there is no genuine issue of material fact in existence, while the non-moving party should be given the benefit of every reasonable doubt. *Tucker v. Hinds County*, 558 So.2d 869, 872 (Miss. 1990).

¶19. Of importance here is the language of the rule authorizing summary judgment "where there is no genuine issue of *material* fact."

6

The presence of fact issues in the record does not per se entitle a party to avoid summary judgment. The court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense...the existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact.

*Simmons v. Thompson Mach. of Miss., Inc.*, 631 So.2d 798, 801 (Miss. 1994) (citing *Shaw v. Burchfield*, 481 So.2d 247, 252 (Miss. 1985)). The evidence must be viewed in the light most favorable to the non-moving party. *See Russell*, 700 So.2d at 622; *Richmond*, 692 So.2d at 61; *Merrimack Mut. Fire Ins. Co.*, 674 So.2d at 7; *Northern Electric Co.*, 660 So.2d at 1281; *Simmons,* 631 So.2d at 802; *Tucker*, 558 So.2d at 872.

¶20. To avoid summary judgment, the non-moving party must establish a genuine issue of material fact within the means allowable under the Rule. *Richmond*, 692 So.2d at 61 (citing *Lyle v. Mladinich,* 584 So.2d 397, 398 (Miss. 1991)). "If any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise the decision is affirmed." *Richmond*, 692 So.2d at 61.

¶21. On appeal, the Estate argues that the chancery court erred by refusing to consider the affidavits of David Smith, Birtie Smith and Frank Smith and not accepting the report of a handwriting expert, Richard Orsini (Orsini), to defeat the motion for summary judgment. The Estate also argues that the petition to investigate and set aside deeds and other relief merits denial of the motion for summary judgment.

**1. David Smith Affidavit**

¶22. The hearing of Floyd's motion for summary judgment was originally set for July 10, 2002. The hearing was reset for October 18, 2002. On October 18, 2002, the day of the

hearing, David's affidavit was filed. The chancery court found that it was undisputed that David's affidavit was filed the day of the hearing and not filed at least one day prior to the hearing. The chancellor examined the affidavit and the circumstances why it was not filed at least one day prior to the hearing. The chancellor correctly cited to *Richardson v. APAC - Mississippi, Inc.*, 631 So.2d 143 (Miss. 1994), where this Court held:

> The circuit judge was correct in striking the opposing affidavits submitted by Richardson because they were not timely filed: "The adverse party *prior to the day* of the hearing may serve opposing affidavits." M.R.C.P. 56 ( c ) (emphasis added). Rule 6 (b) prohibits a trial judge from receiving documents filed after the specified period unless the "failure to act was the result of excusable neglect . . . ." M.R.C.P. 6 (b).

631 So. 2d at 146.

¶23. In *Richardson,* this Court also relied upon the United States Supreme Court decision in *Lujan v. Nat'l Wildlife Federation,* 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed. 2d 695 (1990), since our Mississippi Rules of Civil Procedure are patterned upon the Federal Rules of Civil Procedure. *Richardson,* 631 So.2d at 147. In *Lujan,* the United States Supreme Court determined that evidentiary submission was indeed untimely under both Rule 56© and Rule 6(d) of the Federal Rules of Civil Procedure where affidavits in opposition to a summary judgment were not served prior to the day of the hearing. *Lujan,* 497 U.S. at 895-97, 110 S.Ct. at 3192-93, 111 L.Ed.2d at 720-21. The United States Supreme Court further discussed that F.R.C.P. 6(b) provides the mechanism for the proper approach in case of late filings. *Id.* The Court stated that the decision to allow the late filing rests within the court's discretion and must be for cause shown and is only permissible where the failure to meet the deadline was the result of excusable neglect. *Id. See Richardson,* 631 So.2d at 147.

8

¶24.   Here, the chancery court cited **Richardson** in considering the late filing of the affidavit. The chancellor inquired why David's affidavit was not filed before the hearing.   The chancery court judgment states:

> The response was basically that at the time of the filing of the response by Clifford Smith, the affidavit was not in the possession of the attorney for the estate, nor did he know of that testimony.  The Court again inquired as to why the affidavit was not obtained and filed, in advance of the day of the hearing of the Summary Judgment Motion, in order to determine whether or not there was excusable neglect, which would allow the Court to consider the affidavit of David Smith, however, no reasonable justification was presented.   The administrator, upon advice of counsel is under a duty to diligently persuade and prosecute the case herein. The Court is of the opinion that the information contained in the affidavit of David Smith, was known at the time of the filing the Summary Judgment Motion, and could have been obtained, and filed months prior to the hearing of said Summary Judgment Motion.   The Court is of the opinion that the filing of the affidavit of David Smith, on the day of the hearing, was not through excusable neglect, but it appears that it could have been done had there been a diligent prosecution of the herein case.   Therefore, the affidavit of David Smith cannot be considered by the Court, in reference to the Summary Judgment Motion.

¶25.   The Estate has failed to establish an abuse of the chancellor's discretion in refusing to allow the untimely affidavit. We find  that this assignment of error is without merit.

### 2.  Birtie Smith Affidavit

¶26.   As an exhibit to its motion for reconsideration, the Estate presented a photocopy of an affidavit signed by Birtie on July 11, 1996, which stated:

> On February 19, 1993[,] I went to the office of Darwin Maples, an attorney in Lucedale, Mississippi.  I requested that he prepare three (3) deeds, and copies of these deeds are attached hereto as Exhibit "A".[2]  The deeds were to Floyd W. Smith, Edna Earl Good and Wanda Smith.  I signed my name and the name of my husband, E.W. Smith, at the foot of these deeds and they were notarized by Debbie McDonald.   E.W. Smith did not go with me to Mr. Maples' office that

---

[2] The photocopy of Birtie's affidavit does not have any deeds attached to it as referenced in the affidavit.

day, nor was he aware that I was having these deeds prepared and was signing his name to them.

¶27. Prior to the execution of her affidavit on July 11, 1996, Birtie had previously been placed under a conservatorship by the Chancery Court of George County on April 12, 1996. Chancellor Watts signed the order of conservatorship. Based on the adjudication that placed Birtie under a conservatorship, the petition to probate the will, filed on October 17, 1997, requested that Ernest, Jr., be appointed executor even though Ernest's will appointed Birtie. When the Estate was opened, Ernest, Jr., was appointed executor of the Estate. Birtie died on February 23, 1999.

¶28. Despite the fact that Birtie's affidavit was signed on July 11, 1996, months after she was placed under a conservatorship, the Estate did not present Birtie's affidavit to the chancery court prior to or even on the day of the summary judgment hearing on October 18, 2002. The photocopy of the affidavit was presented to the chancery court as an attachment to the Estate's motion for reconsideration filed on March 13, 2003.

¶29. In the opinion denying the Estate's motion for reconsideration, the chancery court found:

> The copy of the above affidavit of Birtie was never presented to the Court prior to, or on the date of the hearing of the Summary Judgment, therefore, the Court was without the benefit of said affidavit on the date of the hearing. There has been no explanation why the affidavit of Birtie was not presented to the Court on or before the hearing of the Summary Judgment.

¶30. On appeal, Floyd cites the previously discussed cases, *Richardson,* 631 So.2d 143, and *Lujan*, 497 U.S. 871, in support of the chancellor's decision to not consider the untimely filed affidavit. As also discussed in the chancery court's opinion, Floyd's brief contends that the

10

Estate never provided a reason for the late filing of the affidavit. Floyd also notes that Birtie's affidavit discusses her activities on the day of February 19, 1993, not the day in question, February 18, 1993.

¶31. We find that the chancery court did not abuse its discretion in refusing to consider Birtie's affidavit. This issue is without merit.

### 3. Frank Smith Affidavit

¶32. On August 17, 2001, Frank, through counsel, filed a separate response to Floyd's motion for summary judgment. Attached as an exhibit to the response was Frank's affidavit dated August 15, 2001. The affidavit provided that he had been informed by his brother, Clifford, C.T.A. of the Estate, that the services of a handwriting expert had been retained. However, the expert had not rendered a final report, and no affidavit had been obtained. Frank did not make a request for a continuance for additional time to secure an affidavit from the unidentified expert.

¶33. Orsini's report was not filed until more than two years later on March 13, 2003, attached to the motion for reconsideration. No affidavit was ever secured from Orsini.

¶34. Floyd states that M.R.C.P. 56(f) provides that a continuance may be requested to obtain an unavailable affidavit. However, Floyd argues that Frank never made such a motion for continuance to the chancery court for the chancellor to consider. In fact, the affidavit was never obtained. Floyd contends that M.R.C.P. 56(f) is not designed to protect litigants who are lazy or dilatory. *See **Marx v. Truck Renting & Leasing Ass'n, Inc.,*** 520 So.2d 1333, 1344 (Miss. 1987) (decision to grant a continuance or order further discovery rests within the sound discretion of the trial judge and will not be reversed except for abuse of discretion).

11

¶35. Here, the chancellor did not have a motion for continuance to obtain an affidavit from the expert. Frank filed an affidavit of what he had been told by Clifford, Administrator, C.T.A. The affidavit provided that according to Clifford, the expert's affidavit was not available. The chancery court found:

> The Court will now consider Frank's Response, with filed affidavit. Rule 56 C provides that supporting and opposition affidavits are to be on personal knowledge of the affiant. The affidavit of Frank Smith is an affidavit as to what Clifford Smith had done. Floyd Smith, by and through his attorney, objected to the affidavit in that it was basically hearsay and should have been executed by Clifford Smith, as to what Clifford Smith had done. There is a question in the Court's mind as to why Clifford Smith did not execute the above affidavit or present evidence as to why he did not sign said affidavit.
> Further, for the sake of argument, if the Court found that the affidavit was proper, it does not refute nor contradict the deposition attached to Floyd Smith's Summary Judgment Motion. Further, the Summary Judgment Motion was filed July 31, 2001. The hearing on the Summary Judgment Motion was held on October 18, 2002. The hearing was over a year after the filing of the Summary Judgment Motion. There has been no production of any affidavit of an handwriting expert as provided in the above affidavit. Nor has there been any reasonable explanation for not having obtained the affidavit from the alleged handwriting expert.
>
> Therefore, the Court finds that the affidavit of Frank Smith does not create a genuine issue of fact of a material issue to be tried by the Court. The Court cannot reward procrastination in obtaining evidence which should have been produced many months ago, it [sic] existed.

¶36. We find that the chancery court did not err in finding that Frank's affidavit did not create a genuine issue of a material fact to deny Floyd's motion for summary judgment.

### 4. Richard Orsini Report

¶37. The Estate attached the supplemental report of Richard Orsini, a board certified document examiner, dated January 23, 2003, to its motion for reconsideration filed on March 13, 2003. Orsini's report was not presented to the chancery court prior to or on the day the

12

motion for summary judgment on October 18, 2002. The judgment granting summary judgment in favor of Floyd was executed by the chancellor on March 3, 2003.

¶38. On appeal, Floyd argues that the report dated January 23, 2003, was not filed until the Estate attached it as an exhibit to its motion to reconsider on March 13, 2003. Therefore, the report was available to be submitted, along with a qualifying affidavit from Orsini, prior to the chancellor's rendering the judgment on the motion for summary judgment.

¶39. Furthermore, Orsini's report is not in the form of an affidavit and is not sworn to by Orsini. Only the report was attached to the motion for reconsideration. No affidavit was ever provided from Orsini.

¶40. The report was not prepared at the time the summary judgment motion was heard by the chancery court. The Estate's petition to set aside the three deeds was filed on April 14, 1998. Floyd filed his answer and counterclaim to the petition. Attorney Maples was deposed regarding the deeds on September 3, 1999. Floyd filed his motion for summary judgment on July 31, 2001. The hearing on the motion for summary judgment was set for October 22, 2001, but was continued and reset until January 18, 2002. The hearing was reset a third time and heard on October 18, 2002.

¶41. However, the Estate did not produce a handwriting report or obtain an affidavit from a handwriting expert before the hearing. Years passed between the date the Estate filed the petition to set aside the deed and the hearing on the motion for summary judgment.

¶42. In its opinion denying the motion for reconsideration, the chancery court stated:

> The Court has received the above Supplemental Report which referred to the comparison of the signatures of Ernest and Birtie on documents labeled Q1, Q2, and Q3. However, the original report of Orsini was not attached to the

13

Supplemental Report and, therefore, the references as to Birtie signing the name of Ernest are still not shown to the Court by these documents. Irrespective of the above, the above information was provided after the hearing of the Summary Judgment, and therefore was not before the Court at the hearing of the Summary Judgment.

¶43. Floyd also contends that the Estate's failure to present an affidavit from Orsini amounts to failure to diligently prosecute the case, citing *MST, Inc. v. Mississippi Chemical Corp.,* 610 So.2d 299 (Miss. 1992) and *Roebuck v. McDade,* 760 So.2d 12 (Miss. Ct. App. 1999). In *MST*, this Court held: "MST needed to rebut by some sworn testimony. The failure to respond to the prior affidavits seems entirely attributable to MST's failure to diligently prosecute the case." *MST,* 610 So.2d at 305.

¶44. In *Roebuck,* landowners filed a malpractice action against an attorney for alleged defects in a title opinion. The circuit court granted the attorney's motion for summary judgment. *Roebuck,* 760 So.2d at 12-13. The Court of Appeals affirmed the summary judgment and stated that inability to procure contrary evidence, while unfortunate, was not sufficient to defeat the motion for summary judgment. *Id.* at 15.

¶45. We find that the chancery court did not err in denying the Estate's motion for reconsideration based upon Orsini's report. This issue is without merit.

### 5. Executor's Petition to Set Aside Deeds

¶46. On appeal, the Estate also argues that the petition to investigate and set aside deeds and other relief executed by the Executor Ernest, Jr., creates a genuine issue of a material fact and justifies denial of the motion for summary judgment. Therefore, the Estate contends that the chancellor erred in granting summary judgment. Rule 56© provides in pertinent part:

14

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

¶47. Floyd responded to the Estate's petition to set aside the deeds. Floyd deposed the attorney that prepared the deeds. Floyd filed for summary judgment attaching a copy of Maples's deposition. After conducting a hearing, the chancery court granted the summary judgment in favor of Floyd. We find that this assignment of error is without merit.

## II. Notice to Heirs

¶48. The Estate filed its petition to set aside the three warranty deeds and requested process be issued only as to Floyd, Edna and Wanda. The Estate did not name the beneficiaries of the will or request process in the petition to set aside the deeds except as to those previously stated. However, on appeal, Floyd notes that Frank intervened without objection from him and without complying with M.R.C.P. 24. The Estate, not Floyd, elected not to notice each beneficiary of the will.

¶49. M.R.C.P. 17(a) provides:

An executor, administrator, guardian, bailee, trustee, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his representative capacity without joining with him the party for whose benefit the action is brought.

¶50. In its motion for reconsideration, the Estate raised the issue that the heir, David, was not noticed of the hearing held on Floyd's motion for summary judgment to the Estate's petition to set aside deeds. The chancery court held:

The Court is mindful of the fact that the Administrator C.T.A., is under a duty to determine all the assets of the estate. He is also under a fiduciary duty owed to the decendants, creditors and beneficiaries to protect the assets of the estate

15

being administered. *Estate of King I*, 501 So.2d 1122. The Court is of the opinion that the Administrator C.T.A. is under a duty to protect the rights of all beneficiaries under the Will, and see that they receive their interest in the estate, when allowed by the Court.

The Administrator C.T.A. is under a duty to pursue ever [sic] legal right for the benefit of both the creditors and beneficiaries of the estate to which they are entitled. The Administrator C.T.A. performs the above duties as trustee of the assets on behalf of the beneficiaries and creditors of the estate. The Court is of the opinion that the Administrator C.T.A. stands in the place of, and instead of, each beneficiary in their rights and obligations in reference to the estate.

It is evident that the Administrator C.T.A. attempted to perform the above functions when he attempted to set aside the three deeds in question in his Petition under consideration by the Court. He attempted to set the above deeds aside on behalf of all the creditors and beneficiaries in the estate. Therefore, the Court is of the opinion that it was not necessary for Floyd Smith to issue legal process to David Smith, in Floyd Smith's opposition to the Petition filed by the Administrator C.T.A., in reference to his Summary Judgment Motion. The Administrator C.T.A. was acting on behalf of David Smith as a beneficiary of the estate when he filed the Petition in question, and also when he objected to the Motion For Summary Judgment.

¶51. In *Smith ex rel. Young v. Estate of King,* 501 So.2d 1120, 1122 (Miss. 1987), cited by the chancery court, this Court stated that the administratrix is a fiduciary and under the duty to perform as a trustee to both the creditors and to the heirs.

¶52. Here, the heirs were named in the probated will. The Administrator C.T.A., was acting on behalf of all the heirs to set aside the deeds in order to bring the real property back into the estate. The Estate was properly noticed of the hearing on Floyd's motion for summary judgment. We find that this assignment of error is without merit.

## CONCLUSION

¶53. For the foregoing reasons, the judgment of the Chancery Court of George County is affirmed.

16

¶54.    **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING**.